**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | ) | No. 14-MD-2543 (JMF) |
| | ) | |
| GENERAL MOTORS LLC IGNITION | ) | |
| SWITCH LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| SKYYE NEWELL, individually and on | ) | |
| behalf of minor, JANIHYA TAYLOR; | ) | |
| | ) | |
| And | ) | |
| | ) | |
| DIANE NEWELL, individually; | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| | ) | |
| GENERAL MOTORS LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

COME NOW Plaintiffs, and for their claims and causes of action for their injuries,

against Defendant GENERAL MOTORS LLC, allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs SKYYE NEWELL, DIANE NEWELL, and JANIHYA TAYLOR

are and were at all times relevant citizens and residents of the state of Texas.

2.      Defendant GENERAL MOTORS LLC ("New GM" or "Defendant") is not a

citizen of Texas. General Motors LLC is (and was at the time this lawsuit was filed) a

Delaware limited liability company with its principal place of business in Michigan. General Motors LLC's sole member and 100 percent owner is General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member and 100 percent owner is Defendant General Motors Company, which is (and was at the time this lawsuit was filed) a publicly traded Delaware corporation with its principal place of business in Michigan, making General Motors LLC a citizen and resident of Delaware and Michigan.

3.     With respect to the facts alleged and claims asserted in this Complaint, New GM is the corporate successor of General Motors Corporation ("Old GM"), which filed a voluntary Petition for relief under Chapter 11 of the U.S. Bankruptcy Code on June 1, 2009.  (General Motors Corporation and General Motors LLC will be collectively referred to as "GM").  On or about July 10, 2009, New GM acquired substantially all of the assets and assumed certain liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  Plaintiffs' causes of action in this lawsuit are brought against New GM for acts or omissions that occurred after July 10, 2009, and Plaintiffs do not assert any causes of action against Old GM.  Although this Complaint references facts against Old GM, it is for background and reference purposes only.  At all times relevant to the claims in this lawsuit, GM has been in the business of developing, manufacturing, and marketing cars throughout the State of New York.  New GM has a network of authorized retailers that sells New GM vehicles and parts throughout New York and the United States.

4.     Complete diversity exists between Plaintiffs and Defendant.  Plaintiffs are

seeking damages in excess of $75,000.00, exclusive of interest and costs. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332.

5.      Pursuant to the Court's instructions, Plaintiffs may file directly in the MDL court and reserve the right to have filed in another district. Plaintiffs filed in this District in order to advance the efficient and orderly resolution of claims arising from Defendant's conduct and its attendant nationwide devastating effects. Filing in this District does not alter the choice-of-law analysis and does not waive Plaintiffs' rights to transfer to another district at the conclusion of pretrial proceedings in this case. Therefore, this Complaint is filed by Plaintiffs as if they had filed in the district in which the accident occurred, the Eastern District of Texas, Sherman Division.

6.      This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over New GM because New GM conducts substantial business in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because New GM, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## BACKGROUND FACTS

8.      Plaintiff SKYYE NEWELL operated a 2008 Chevrolet Cobalt ("Subject Vehicle" or "2008 Chevrolet Cobalt") on January 13, 2014. On that date, Plaintiffs DIANE NEWELL and JANIHYA TAYLOR were passengers in the vehicle. The Plaintiffs were traveling in Denton County, Texas, in a reasonable and customary manner. Plaintiffs were traveling East in the 100 block of Round Grove street when they stopped behind another

vehicle at a red light.  Another vehicle traveling behind the Plaintiffs failed to stop for the light and collided into the rear of Plaintiffs' vehicle.  The force of the collision caused Plaintiffs' vehicle to collide with the car in front of them.  The airbags did not deploy.

9.     As a result of the collision, Plaintiffs suffered serious injuries.

10.     Unbeknownst to the Plaintiffs, the 2008 Chevrolet Cobalt had a serious and unreasonably dangerous defect with the ignition switch and or electronic stability control system. Specifically, the ignition switch had the ability to change from the "Run" position to the "Accessory" position while the vehicle was moving, thereby causing the engine to lose power with a resultant loss of power to the steering, brakes, and other essential safety functions of the car.  This defective condition directly resulted in a loss of safety functionality exactly at the time and place where the Plaintiffs most needed these essential functions to lessen the impact of the collision.

11.     The problems with the 2008 Chevrolet Cobalt was not unique.  The subject vehicle was one of many vehicles subject to recent recall(s) relating to a large number of GM vehicles' ignition switches and electronic stability control systems.  A recall notice was issued by New GM for certain makes of its vehicles, including the subject 2008 Chevrolet Cobalt, on or about March 27, 2014.  At or about that that time, New GM issued a notice to the National Highway Traffic Safety Administration ("NHTSA"), notifying it of a recall  to  include 2008-2010 Chevrolet Cobalts, Saturn Skys, Pontiac G5s and Solstices, and 2008-2011 Chevrolet HHRs.  ("Subject Vehicles").  The total number of vehicles affected by this and related recalls is in the millions.

12.     As part of the recall mentioned above and other recalls, New GM admitted

that if the key ring is carrying added weight and the vehicle goes off road or experiences some other jarring event, it may unintentionally move the key away from the "Run" position.

13.     New GM further admitted that if this occurred, engine power, power steering, and power braking will be affected, increasing the risk of a crash or vehicle stall.

14.     GM began installing defective ignition switches beginning as early as 2000 in certain GM vehicle models. Upon information and belief, GM knew the ignition switches were defectively designed, but nonetheless continued to manufacture and sell defective ignition switches with the knowledge that they would be used in GM vehicles, including the Subject Vehicles.

15.     As background, and not as a basis for damages, the recently published "Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls" authored by Anton R. Valukas ("The Valukas Report"), provides that GM made a conscious decision, in the fall of 2002, to use the defective ignition switch in the Subject Vehicles "that was so far below GM's own specifications that it failed to keep the car powered on in circumstances that drivers would encounter." GM knew of, and approved, the final version of the Ignition Switch that was installed in millions of cars despite knowing that the force required to disengage the ignition switch was far below minimum specifications.

16.     As background, and not as a basis for damages, according to documents obtained by a United States House of Representatives committee during an investigation into the Defective Ignition Switches, GM opened an opened an engineering inquiry about

the defective Ignition Switch in 2004 after customers complained that the Subject Vehicles could be turned off while driving.

17.     As background, and not as a basis for damages, in addition, as early as 2005, GM knew that a key hole design modification that would require a piece price increase of $0.50 per vehicle could prevent certain movements in the ignition switch of certain GM vehicles with the same or similar ignition switches. Yet GM found that the part was too expensive and the change would take too much time.

18.     Because of defects in their design, the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions.  The key sold with the 2008 Chevrolet Cobalt has a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"). When this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the safety vehicles' safety features.

19.     The Ignition Switch Defect can occur at any time during normal and proper operation of the Subject Vehicles, meaning the ignition can suddenly switch off while it is moving at 70 mph on the freeway, leaving the driver unable to control the vehicle, and vulnerable to a nonfunctioning safety system.

20.     The Ignition Switch Defect precludes drivers and owners of the Subject Vehicles, such as Plaintiffs, from proper and safe use of their vehicles, reduces vehicle

occupant protection, and endangers them and other vehicle occupants. However, no driver or owner of the Subject Vehicles, including the Plaintiffs, knew, or could reasonably have discovered, the Ignition Switch Defect, prior to it manifesting in a sudden and dangerous failure.

21.     Upon information and belief, prior to the sale of the Subject Vehicles, GM knew of the Ignition Switch Defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to GM, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from GM dealers; and accident data.  Despite this knowledge, GM failed to disclose and actively concealed the defects in the ignition switch from the Plaintiffs and the public, and continued to market and advertise the Subject Vehicles as reliable and safe vehicles, which they are not.

22.     As a result of GM's misconduct, the Plaintiffs suffered actual damages and physical injuries, in that the Subject Vehicles are unsafe, unfit for their ordinary and intended use, and have manifested, or are at unreasonable risk of manifesting, the Ignition Switch Defect by way of a sudden and dangerous failure that puts them and others at serious risk of injury or death. Drivers and owners of the Subject Vehicles, including the Plaintiffs, did not receive the benefit of their bargain as purchasers and/or lessees, received vehicles that were of a lesser standard, grade, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Drivers and owners of

the Subject Vehicles, including the Plaintiffs, did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided, as GM knew but did not disclose, through the use of non-defective ignition parts.

## COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT

23.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

24.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

25.     Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2008 Chevrolet Cobalt, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

26.     At all times relevant herein, the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

27.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale the subject 2008 Chevrolet Cobalt, and used in the manner for which they were intended by the Defendant.

28.     At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

(a)     the Subject Vehicles, including their component parts, which includes their ignition switches, contained manufacturing defects;

(b)     the ignition switches in the Subject Vehicles were inadequately manufactured; and/or,

(c)     the Subject Vehicles, including their component parts, which includes their ignition switches, were not made in accordance with Defendant's specifications or performance standards.

29.     The manufacturing defects of the Subject Vehicles, including the 2008 Chevrolet Cobalt, occurred while the product was in the possession and control of the Defendant.

30.     The manufacturing defects of the Subject Vehicles, including the 2008 Chevrolet Cobalt, existed before they left the control of Defendant.

31.     It was foreseeable to Defendant that the Subject Vehicles and their component parts, including the ignition switch, which were manufactured, designed, inspected, tested, assembled, equipped, distributed, and/or sold or otherwise placed into the stream of commerce would fail and cause users and consumers like the Plaintiffs to be

unable to control said vehicles and be involved in a collision.

32.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured.   Their injuries and damages are permanent and will continue into the future.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs pray for judgment in Count I against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT II: STRICT LIABILITY - DESIGN DEFECT

33.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

34.     Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, and component parts thereof, including but not limited to, equipping them with an ignition

switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

35.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2008 Chevrolet Cobalt, and the component parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

36.    At all times relevant herein, the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, and component parts thereof, including the ignition switch, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

37.    It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the subject 2008 Chevrolet Cobalt, and used in the manner for which they were intended by the Defendant.

38.    At all times relevant herein, the Subject Vehicles were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time they were placed in the stream of commerce in ways which include, but are not limited to, one or more of the following:

   (a)    having an ignition switch that is inadequately designed and located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)     having an ignition switch that allows the 2008 Chevrolet Cobalt to stall or lose engine power, and steering and/or full braking ability while driving;

(c)     having frontal airbags that may not deploy when the key is in the accessory/off position; and,

(d)     failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the vehicle known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

39.     When placed in the stream of commerce, the Subject Vehicles were defective in design, in that they were not reasonably fit, suitable, or safe for their intended purpose and/or their foreseeable risks exceed the benefits associated with their design, making the use of the Subject Vehicles more dangerous than an ordinary consumer would expect, and more dangerous than risks associated with alternatives.

40.     In addition, at the time the Subject Vehicles left the control of the Defendant, there were practical and feasible alternative designs of the Subject Vehicles and their component parts, including the ignition switches that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of the Subject Vehicles.  These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the Subject Vehicle's utility.

41.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses

for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity. Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured. Their injuries and damages are permanent and will continue into the future. Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs pray for judgment in Count II against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT III: STRICT LIABILITY - FAILURE TO WARN

42.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

43.    Defendant designed, selected, inspected, tested, assembled, equipped, manufactured, marketed, distributed, and/or sold or otherwise placed into the stream of commerce the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, and component parts thereof, including but not limited to, equipping them with an ignition switch with design, manufacturing, and/or marketing defects, more particularly set forth herein.

44.    Defendant had a legal duty to design, inspect, test, manufacture, and assemble the Subject Vehicles, including the 2008 Chevrolet Cobalt, and the component

parts so that they would be reasonably crashworthy and provide a reasonable degree of occupant safety in foreseeable collisions occurring in the highway environment of its expected use.

45.     At all times relevant herein, the Subject Vehicles were expected to reach, and in fact did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

46.     At all times relevant herein, the Subject Vehicles, including the subject 2008 Chevrolet Cobalt and component parts thereof, including the ignition switch system, were expected to reach, and did reach, consumers throughout the United States without substantial change in the condition in which they were sold.

47.     It was foreseeable to Defendant that the Subject Vehicles would be sold to consumers throughout the United States, including the sale of the subject 2008 Chevrolet Cobalt, and used in the manner for which they were intended by the Defendant.

48.     At all times relevant herein, the Subject Vehicles, including the subject 2008 Chevrolet Cobalt, were defective and unreasonably dangerous when they left the possession of Defendant in that they contained warnings insufficient to alert consumers and users, including the Plaintiffs herein, of the dangerous risks associated with the defective condition of the Subject Vehicles, notwithstanding Defendant's knowledge of the dangerous risks, including but not limited to the following:

     (a)    having an ignition switch that is inadequately designed, constructed, and/or located, which may result in the key moving from the "Run" to "Accessory" or "Off" position during normal driving maneuvers;

(b)     having an ignition switch that allows the 2008 Chevrolet Cobalt to stall or lose engine power, and steering and/or full braking ability while driving;

(c)     having frontal airbags that may not deploy when the key is in the accessory/off position; and,

(d)     failing to adequately warn the Plaintiffs, other consumers, or the public in general, about the unsafe and defective condition and design of the Subject Vehicles known to GM, so that individuals like the Plaintiffs could make informed and prudent decisions regarding the purchase and/or use of such vehicles.

49.     The Plaintiffs could not, by the exercise of reasonable care, have discovered the defects herein mentioned and perceived their danger.

50.     Defendant knew or should have known of the risks of the defective condition of the Subject Vehicles and their component parts.

51.     Additionally, Defendant, as manufacturer, designer, distributor, and/or seller of the Subject Vehicles is held to the level of knowledge of an expert in the field.

52.     The Plaintiffs reasonably relied upon the skill, superior knowledge and/or judgment of Defendant.

53.     Defendant had a duty to warn the Plaintiffs and consumers of the dangers associated with the Subject Vehicles and their component parts, including the ignition switch.

54.     Despite Defendant's knowledge of the risks of the defective condition of the Subject Vehicles and their component parts, Defendant failed to adequately warn the Plaintiffs and consumers of those risks.

55.     Had the Plaintiffs received adequate warnings regarding the unsafe and defective condition of the Subject Vehicles and their risks, they would not have purchased

and/or used such vehicle.

56.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured.   Their injuries and damages are permanent and will continue into the future.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs pray for judgment in Count III against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT IV: NEGLIGENCE

57.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

58.     Defendant was negligent in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the subject 2008 Chevrolet Cobalt.

59.     Defendant had a duty to individuals, including Plaintiffs, to use reasonable care in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the subject 2008 Chevrolet Cobalt.

60.     Defendant was negligent in failing to use reasonable care as described here in designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the subject 2008 Chevrolet Cobalt.  Defendant breached its aforementioned duty by:

(a)     Failing to design the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants, including Plaintiffs, of the Subject Vehicles, including the 2008 Chevrolet Cobalt;

(b)     Failing to manufacture the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2008 Chevrolet Cobalt, including Plaintiffs;

(c)     Failing to use reasonable care in the testing of the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2008 Chevrolet Cobalt, including Plaintiffs;

(d)     Failing to use reasonable care in inspecting the ignition switch so as to avoid an unreasonable risk of harm to drivers, users, and occupants of the Subject Vehicles, including the 2008 Chevrolet Cobalt, including Plaintiffs; and,

(e)     Otherwise negligently or carelessly designing, selecting, inspecting, testing, assembling, equipping, manufacturing, marketing, distributing, and/or selling or otherwise placing into the stream of commerce the ignition switch which was selected and installed in the Subject Vehicles, including the 2008 Chevrolet Cobalt.

61.     Defendant also negligently failed to warn or instruct the Plaintiffs and/or

others that the ignition switch which was selected and installed in the Subject Vehicles, including the 2008 Chevrolet Cobalt, had an unsafe and defective condition and design which was known to Defendant.

62.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured.   Their injuries and damages are permanent and will continue into the future.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs pray for judgment in Count IV against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT V: FRAUDULENT CONCEALMENT

63.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

64.     At all times during the course of dealing between Defendant and Plaintiffs and the general public, Defendant misrepresented the safety of the Subject Vehicles,

including the 2008 Chevrolet Cobalt, for their intended use.

65.    Defendant knew or was reckless in not knowing that its representations were, in fact, false.

66.    In representations to Plaintiffs and the general public, Defendant fraudulently concealed and intentionally omitted material information, including but not limited to, the fact that:

    (a)    the Subject Vehicles were manufactured and/or designed negligently, defectively, and/or improperly in that the ignition switches installed in the Subject Vehicles are, by their nature, loose and/or improperly positioned and are susceptible to failure during normal and expected conditions;

    (b)    the keys sold with the Subject Vehicles have a slot design which allows the key fob or chain to hang lower on the key and increases the chance of the key inadvertently moving from the "Run" to "Accessory" or "Off" position during ordinary driving maneuvers (the "Ignition Switch Defect"); and,

    (c)    when this ignition switch failure occurs, the motor engine and certain electrical components such as power-assisted steering and anti-lock brakes are turned off, thereby endangering the vehicle occupants and compromising the vehicle safety system.

67.    Defendant was under a duty to disclose to Plaintiffs and consumers the defective nature of the Subject Vehicles, including, but not limited to, the Ignition Switch Defect.

68.    Defendant had sole access to material facts concerning the defective nature of the Subject Vehicles and its propensity to cause serious and dangerous side effects, and hence cause damage to persons who used the Subject Vehicles, including Plaintiffs in particular.

69.    Defendant's concealment and omissions of material facts concerning, inter

alia, the safety of the Subject Vehicles was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs and consumers into reliance on the use of the Subject Vehicles, and to cause them to purchase and/or use the product.

70.     Defendant knew that consumers had no way to determine the truth behind Defendant's concealment and omissions, as set forth herein.

71.     Plaintiffs reasonably relied on facts revealed which negligently, fraudulently, and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

72.     As a direct and proximate result of the foregoing acts and omissions, the Plaintiffs suffered severe and permanent physical injuries.  They have endured, and will continue to endure, substantial pain and suffering.  They have incurred significant expenses for medical care and treatment, and will continue to incur such expenses in the future. Plaintiffs have lost past earnings and have suffered a loss of earning capacity.  Plaintiffs have suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally, and economically injured.  Their injuries and damages are permanent and will continue into the future.  Plaintiffs seek actual and punitive damages from Defendant as alleged herein.

WHEREFORE, Plaintiffs pray for judgment in Count V against Defendant for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), which is fair and reasonable, costs herein expended, punitive damages to punish and deter any such conduct in the future and such other relief as the Court deems just and proper under the circumstances.

## COUNT VI: PUNITIVE DAMAGES

73.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

74.     While New GM expressly accepted responsibility for accident occurring on or after July 10, 2009, it also acquired knowledge of Old GM's activities generally, and the existence of the defective ignition switches and or electronic stability control defects in place in millions of vehicles specifically. New GM acquired personnel, documents, and electronic data from Old GM, including but not limited to, top leadership personnel, executives, members of the Board of Directors, internal legal counsel, engineers and quality control personnel. Most importantly, New GM retained the engineer in charge of designing and approving the manufacturing specifications of the defective ignition switch. The employees retained by New GM carried with them the knowledge they gained at Old GM. New GM also acquired knowledge about the issues with the ignition switch, moving stalls and airbag non-deployment through the chief engineer, design and manufacturing documents, internal memorandum, and reports to the Board of Directors. New GM continued to service – and to receive complaints about – vehicles manufactured on Old GM's watch.

75.     New GM also acquired certain duties with regard to vehicles in production and on the road at the time of the Sale and Purchase Agreement – duties it breached egregiously – as has been well-publicized and for which it has been justifiably criticized. These duties included, but are not limited to, those arising under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § and the Transportation Recall Enhancement,

Accountability and Documentation Act, 49 U.S.C. §§ 30101-30170. GM was fined $35 Million by NTSHA for its delayed reporting of the ignition switch problem and violating federal safety laws.

76.     New GM's liability for damages is attributable to its own post-sale conduct and failure to timely remedy and/or recall vehicles it knew had deadly defects, even with regard to vehicles manufactured and sold prior to the Sale and Purchase Agreement.

77.     Defendant sold the Subject Vehicles, including the 2008 Chevrolet Cobalt, to consumers without doing adequate testing to ensure that the Subject Vehicles were reasonably safe for their use and intended purposes.

78.     Defendant sold the 2008 Chevrolet Cobalt in spite of its knowledge that the ignition switches can unexpectedly and suddenly move from the "On" or "Run" position while the vehicle is in operation to the "Off" or "Accessory" position, thereby causing severe injuries suffered by Plaintiffs and numerous other individuals.

79.     Defendant ignored reports of consumers, which began as early as 2004, regarding the ignition switch of certain GM vehicles with the same or similar ignition switches throughout the United States and elsewhere of the products' failures to perform as intended, which led to the severe injuries suffered by Plaintiffs and numerous other individuals.

80.     Defendant knew of the Subject Vehicles' defective and unreasonably dangerous nature, but continued to manufacture, market, distribute, and sell the products so as to maximize sales and profits at the expense of the health and safety of the public.

81.     Defendant, through its conduct in designing, testing, manufacturing,

assembling, marketing, selling, and failing to adequately repair the 2008 Chevrolet Cobalt purchased and/or used by Plaintiffs, demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifferent to consequences, thereby justifying an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that in addition to actual damages, they be awarded an additional amount as and for punitive damages in their favor and against Defendant, in an amount which will serve to punish Defendant and deter Defendant and others from like conduct in the future.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Eric G. Jensen*
                 Eric G. Jensen MO# 43094
                 Derek H. Potts MO# 44882
                 100 Waugh, Suite 350
                 Houston, Texas 77007
                 (713) 963-8881 (telephone)
                 (713) 583-5388 (facsimile)
                 ejensen@potts-law.com
                 dpotts@potts-law.com

                 **ATTORNEYS FOR PLAINTIFF**